[Civ. No. 45350. Second Dist., Div. Three. Dec. 30, 1975.]

DAVID BAIRD et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Dryden, Harrington & Swartz, George J. Franscell and Peter Abrahams for Plaintiffs and Appellants.

Burt Pines, City Attorney, John B. Rice, Assistant City Attorney, and Barbara E. Miller, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**COBEY, J.—** ▉ The sole issue on this appeal in a mandamus proceeding by four police officers (hereafter called petitioners) is whether the respondent police chief could properly demote them within their civil service classification of police officer for a nondisciplinary reason from police officer III to police officer II without complying with the formal board of rights procedures provided in section 202 of the Charter of respondent City of Los Angeles (hereafter City).[1] The trial court, in the minute order it entered preliminary to its making and entering the judgment under appeal denying petitioners relief in mandamus, determined that respondent police chief could so demote them because section 202 of the charter applies only to disciplinary cases. We agree that the charter section does not apply to the nondisciplinary demotions before us and we will therefore affirm.

---

[1]Petitioners David Baird, Kenneth Hornick, Charles Crook and Lonnie Melchoir were first suspended pursuant to section 202 for varying periods from 15 days to 36 days for certain activities they engaged in, thereafter brought before a departmental evaluation review board, found not to have satisfactorily performed the duties of police officer III, and demoted to police officer II.

Petitioners do not challenge their suspensions, but only their demotions from a selective class of positions to a nonselective class. Furthermore, they do not challenge the validity of the procedures used to demote them other than that such procedures did not comply with the requirements of section 202. Finally, they do not claim that the demotions were in any sense disciplinary in character.

This case is before us on rehearing.

Section 202, subdivision (1), in pertinent part provides that: "No officer or employee of the Police Department shall be suspended, removed, deprived of his office or position, *or otherwise separated from the service of the Police Department* (other than by resignation), except for good and sufficient cause shown upon a finding of 'guilty' of the specific charge or charges assigned as cause or causes therefor after a full, fair and impartial hearing before the Board of Rights . . . ." (Italics added.)

Petitioners contend that their nondisciplinary demotions involve removals of them from their positions as police officer III and could therefore properly be accomplished only pursuant to section 202 of the city charter. According to them, any reduction of a police officer in either rank or salary for any reason necessitates, as a preliminary thereto, a resort to the formal protective procedures provided in section 202.

The City contends, on the other hand, that section 202 did not apply to the demotions at issue for two separate and independent reasons. First, the section applies only to separations from the service of the police department and, second, it covers only cases of discipline for misconduct.

The parties also dispute whether police officer III is a position within the meaning of section 202. Petitioners claim that it is and the City asserts that it is not. To us it appears to be primarily a pay grade within the civil service classification of police officer that the city council established by ordinance pursuant to the Jacobs Plan calling for a more refined classification for pay purposes of various positions in the City's police and fire departments. (See *Melendres* v. *City of Los Angeles,* 40 Cal.App.3d 718, 724 [115 Cal.Rptr. 409]; see also Los Angeles City Admin. Code, §§ 4.140, subds. (c), (f), (i), (m), (n), 4.142, 4.157, 4.158, subd. (a).) It is a subclassification for salary purposes only of the civil service classification of police officer and one made by the city council under its charter power (Los Angeles Charter, § 33) to fix salaries generally of City officers and employees.

In any event, we do not regard the decisive question to be whether police officer III is a position within the meaning of section 202 of the city charter. We say this because if the City's view is correct that this

section does not apply to the *kind* of removals from positions before us, this disposes of the case.

We so hold on the basis of the following rationale. First, the italicized portion of the language we have quoted (subd. (1) of § 202) indicates that the charter section applies only to "separations from the service of the police department," i.e., suspensions or discharge. Second, this has been the uniform and unvarying interpretation given to the coverage of section 202 by the police department for some 40 years or more.[2] Administrative interpretations of longstanding are entitled to great weight unless they are plainly wrong. (See *Udall* v. *Tallman* (1965) 380 U.S. 1, 16-17 [13 L.Ed.2d 616, 625-626, 85 S.Ct. 792]; *Coca Cola Co.* v. *State Bd. of Equalization,* 25 Cal.2d 918, 921 [156 P.2d 1]; *Benguiat* v. *City of Los Angeles,* 15 Cal.App.3d 621, 626-627 [93 Cal.Rptr. 315].) Third, other subdivisions of the section are consistent with this interpretation. For example, the penalties provided in subdivision (12) are limited to reprimand, suspension and removal. No provision is found therein with respect to demotion or reduction in rank or salary. Likewise the fact that under subdivision (16) a rehearing before a new board of rights may be had at any time *within three years* after a removal strongly suggests that the removal involved must be a separation from the service of the police department.

Lastly, and independent of the foregoing, an examination of the charter section in its entirety reveals that it is completely disciplinary in nature. A finding of "guilty" is required before the department may punish an officer or employee. (Subd. (1).) Such officer or employee is uniformly termed throughout the section either the "accused officer or employee" or much more frequently simply "the accused." (Subds. (3), (5), (6), (7), (8), (12).) The principal penalties imposed under the section are referred to therein as *"penal* suspension or removal." (Italics added.) (Subd. (14).) There is also a prohibition against double jeopardy (subd. (15)) and the due process protections accorded one accused of crime are generally provided—e.g., right to appear in person or by counsel, the right to produce witnesses on behalf of the accused and to cross-examine those witnesses who testify against the accused. (Subd. (12).) Finally, express provision is made for possible judicial review of the administrative proceeding. (Subd. (18).) The foregoing characteristics of the procedures and the principal penalties provided in this charter section

---

[2]There was no evidentiary hearing below. The case was decided on the pleadings and the exhibits attached thereto. The practice stated is based upon an allegation to this effect in respondent's answer. The parties stipulated before the trial court that there was no factual dispute.

make clear to us that the trial court was correct in its legal conclusion that the section applies only to disciplinary proceedings for misconduct.

The judgment under appeal is affirmed.

Ford, P. J., concurred.

**POTTER, J.**—I concur on the first ground alone.

A petition for a rehearing was denied January 26, 1976, and appellants' petition for a hearing by the Supreme Court was denied February 26, 1976.