**SPEEDWAY INTERNATIONAL TRUCKS, INC., Appellant–Defendant,**

v.

**Tony ROSSELLE and Gladys Rosselle, d/b/a T & G Truck Service, Appellees–Plaintiffs,**

**and**

**Navistar Financial Corporation, Appellee–Intervenor Plaintiff.**

**No. 49A02–9303–CV–120.**

Court of Appeals of Indiana, Second District.

Jan. 28, 1994.

Patricia Polis McCrory, Douglas A. Tresslar, Harrison & Moberly, Indianapolis, for appellant.

Richard A. Clem, Alden & Clem, Indianapolis, for appellees.

SHIELDS, Judge.

The sole issue before us is the validity of 49 C.F.R. § 580.6(a)(1) (1992), a regulation adopted by the National Highway Traffic Safety Administration (NHTSA).

### FACTS

Tony and Gladys Rosselle purchased a used semi-tractor, weighing in excess of 16,-000 pounds, from Speedway in March of 1989. Subsequent to the purchase, the Rosselles experienced problems with the tractor which resulted in this suit against Speedway. In Counts I and II of their complaint, the Rosselles alleged that Speedway failed to provide them with odometer disclosure statements required by the Federal Odometer

Act, 15 U.S.C. §§ 1981–1991 (1982) (the Act).[1]

Speedway filed a motion for summary judgment on Counts I and II, arguing that it was exempted from compliance with the disclosure regulations. After a hearing, the trial court denied Speedway's motion. Speedway appeals.

### DISCUSSION

Speedway contends that it was entitled to summary judgment on Counts I and II because 49 C.F.R. § 580.6(a)(1) exempts from the disclosure requirements of the Act the transfer of motor vehicles whose weight is in excess of 16,000 pounds. The Rosselles argue the trial court properly denied summary judgment because 49 C.F.R. § 580.6 is void in that it conflicts with the unambiguous statutory language of the Act.

Summary judgment is appropriate only when a genuine issue of material fact does not exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Barsz v. Max Shapiro, Inc.* (1992), Ind.App., 600 N.E.2d 151, 152. "When the only allegation of error is that the trial court misapplied the law, our task on review is to correctly apply the law to the undisputed facts." *Lee v. Estate of Cain* (1985), Ind. App., 476 N.E.2d 922, 923.

In 1972, Congress enacted the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1901–2012 (1988), which includes the Federal Odometer Act, with the purpose of protecting purchasers who rely on the odometer reading as an indicator of the value and condition of the motor vehicle they are purchasing. The Act prohibits tampering with odometers on motor vehicles. 15 U.S.C. § 1981; *Mitchell v. White Motor Credit Corp.* (1986), M.D.Tenn., 627 F.Supp. 1241, 1247. The NHTSA, pursuant to the power given to it by Congress under the Act, promulgated rules for compliance with the Act which are codified at 49 C.F.R. §§ 580 (1992). The regulations specify the disclosure requirements, and also create four exceptions to those requirements, one of which

---

**1.** The Federal Odometer Act is subchapter IV of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1901–2012 (1982).

is the subject of this appeal. That exemption, § 580.6(a)(1), states:

> Notwithstanding the requirements of § 580.4:
>
> (a) A transferor of any of the following motor vehicles need not disclose the vehicle's odometer mileage:
>
>> (1) a vehicle having a gross vehicle weight rating, as defined in § 571.3 of this chapter, of more than 16,000 lbs.

If this regulation is valid, Speedway is entitled to judgment on Counts I and II because it was not obligated to disclose the odometer mileage on the semi-tractor it sold to the Rosselles.

The NHTSA exemption in question has been the subject of litigation. Some courts have concluded that the exemption conflicts with the definition of "motor vehicles" found in the Act at 15 U.S.C. § 1901(15), which states:

> The term "motor vehicle" means any vehicle driven or drawn by mechanical power manufactured primarily for use on the public streets, roads, and highways, except any vehicle operated exclusively on the rail or rails.

See *Lair v. Lewis Service Center* (1977), D.Neb., 428 F.Supp. 778; *Davis v. Dils Motor Co.* (1983), S.D.W.Va., 566 F.Supp. 1360. These courts determined that the subject NHTSA regulation attempted to re-define "motor vehicle" and is in conflict with the Act. *Lair*, 428 F.Supp. at 781; *Davis*, 566 F.Supp. at 1362.

Speedway relies on a third decision, *Mitchell v. White Motor Credit Corp.* (1986), M.D.Tenn., 627 F.Supp. 1241. In *Mitchell*, the district court held that the NHTSA exemption was a permissible exercise of the agency's power to promulgate rules because the exemption did not apply to motor vehicles; rather it created an exemption for a specific class of transferors, that is, persons who transfer vehicles whose odometer reading does not serve as a guide to their value. *Id.* at 1250. Further, "the exemption com-

ports with the purpose of the odometer disclosure requirement which is to protect consumers who rely upon odometer readings as a guide to value." [2] *Id.*

However, like the trial court, we are persuaded by the reasoning of *Lair* and *Davis*. In *Lair*, the district court determined the definition of "motor vehicle" as contained in the Act was not ambiguous, and therefore NHTSA acted outside its scope of authority in issuing the exemption. According to the *Lair* court, the exemption "is not a rule which sets forth certain requirements concerning odometer information when the transfer of a motor vehicle is taking place, but instead is a regulation which amends the definition of a motor vehicle as that term is defined in the [Act]." Record at 88.

The court in *Lair* also addressed the argument that the exemption was valid because it applied to vehicles whose odometer readings were not traditionally relied upon by transferees as a basis to determine the value of the vehicle when purchasing it. *Lair*, 428 F.Supp. at 781. It found that, although this was a cogent argument, the fact that Congress did not exempt various types of motor vehicles was dispositive of the issue. *Id.* The court reasoned that if Congress had intended to allow an exemption to the Act it would have used another more specific term in place of the all-inclusive term "motor vehicle" employed in § 408 of the Act. *Id.* at 781. For example, the court noted that the Act contains two more narrowly drawn definitions—"passenger motor vehicle" and "multi-purpose motor vehicle," defined at 15 U.S.C. § 1901(1) and (2) respectively—which are used in the subchapters of the Act dealing with bumper standards and consumer information studies. *Id.* at 780–81.

The language used by the United States Congress when it enacted the Act is clear and must prevail; therefore, the NHTSA

---

**2.** In its Brief, Speedway asserts that IC 9–19–9–3(a)(2) (1992 Supp.) is consistent with the NHTSA exemption in that it recognizes that odometer readings do not serve as a guide to the value of vehicles with a weight in excess of 11,000 pounds. However, the Indiana statute addresses the operation of vehicles with nonfunctional odometers, not with the transfer of such vehicles; thus it does not support Speedway's argument.

exemption which is directly contrary to the Act is void.[3]

Judgment affirmed.

HOFFMAN, J., concurs.

FRIEDLANDER, J., dissents, with separate opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent, inasmuch as I am not persuaded by the rationales expressed in *Lair v. Lewis Service Center* (1977), D.Neb., 428 F.Supp. 778 and *Davis v. Dils Motor Co.* (1983), S.D.W.Va., 566 F.Supp. 1360.

The better reasoning is espoused in *Mitchell v. White Motor Credit Corp.* (1986), M.D.Tenn., 627 F.Supp. 1241 in regards to the validity of the National Highway Traffic Safety Administration's (NHTSA) exemption of the disclosure requirements pertaining to the transfer of certain motor vehicles under the Federal Odometer Act (the Act).

The *Mitchell* court quoted the NHTSA's rationale for exempting heavier vehicles from The Act as follows:

"A new section [49 C.F.R. §] 580.5, has been added in response to a number of comments that objected to the application of the requirements to categories of vehicles for which the odometer is not used as a guide to value. *Buses and large trucks, for example, are routinely driven hundreds of thousands of miles, and their maintenance records have traditionally been relied on by Buyers as the principal guide to their condition.* The NHTSA is in agreement with the position taken by Freightliner [Corp.], White [Motor Corp.], and the National Association of Motor Bus Operators, and has therefore created an exemption for larger vehicles. The exemp-

tion applies to vehicles having gross weight ratings of more than 16,000 pounds."

*Id.* at 1249 (quoting 38 Fed.Reg. 2978 (1973) (emphasis supplied)). The *Mitchell* court observed that the exemption is consistent with the statute authorizing the Secretary of Transportation, through the NHTSA, to issue rules pertaining to transferors, and that the regulation is in harmony with the statutory scheme contemplated by Congress when it adopted the Act. In regards to the legislative intent surrounding the inception of the Act, the court in *Mitchell* pointed out that "Congress enacted odometer requirements to 'establish a national policy against odometer tampering and prevent consumers from being victimized by such abuses,' [4] finding that 'purchasers, when buying motor vehicles, rely heavily on the odometer reading as an index of the condition and value' of the vehicle.[5]" *Id.* at 1249–50. Since the inception of the regulation in 1972, which *exempts* heavier vehicles from the requirements of the Act, neither Congress nor the NHTSA has taken any action suggesting that the regulatory exemption is improper. It is my view that *Mitchell* correctly posits that purchasers of heavier vehicles do not rely on odometer readings for calculations pertaining to the values of such vehicles.

It is not at all apparent that NHTSA was attempting to re-define the definition of "motor vehicle." Rather, the regulation exempting the transfer of certain vehicles was a valid exercise of the agency's power to regulate *classes of transferors,* i.e., those persons who transfer vehicles whose odometer readings do not serve as a guide to value. This exemption was a proper exercise of the NHTSA's rule-making authority, and the regulation clearly falls within the spirit and

---

**3.** Speedway also argues that the determination of "whether a regulation is permitted by statute" is analogous to the determination of whether a statute is constitutional. Appellant's Brief at 14. It argues that when a regulation is subject to two interpretations, it is the permissible interpretation which courts should adopt. However, it offers no precedential support for its theory. Further,

[i]t is established law that legislative power rests with Congress and that the will of Congress as unambiguously expressed in a properly enacted statute cannot be amended or al-

tered by regulation. Regulations are entitled to consideration in construing an ambiguous statute. However, a regulation to the extent it is in direct variance with the unambiguous statutory provision is clearly void.

*United States v. Maxwell* (1960), 8th Cir., 278 · F.2d 206, 210.

**4.** S.Rep. No. 413, 92nd Cong., 2d Sess. ——, *reprinted in* 1972 *U.S.Code Cong. & Ad.News,* 3960, 3962.

**5.** 15 U.S.C. § 1981 (1982).

purpose of the Act. Such a regulation serves a valid purpose, it is reasonable, and it was statutorily permissible for the agency to promulgate the regulation.

I therefore vote to uphold the exemption and would grant Speedway International's motion for summary judgment.